UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIDIA CALDERON,<br><br>*Plaintiff*,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security,<br><br>*Defendant*. | Civil Action No. 17-494 (RDM) |

## **MEMORANDUM OPINION AND ORDER**

Currently before the Court is the Social Security Administration's third motion to dismiss Nidia Calderon's complaint for failure to exhaust her administrative remedies. The Court rejected the Social Security Administration's two prior motions—once because the agency did not file the attachments upon which it purported to rely, and once because the agency addressed the wrong benefits claim. *See* Minute Order (Jan. 18, 2018); Dkt. 31. The Social Security Administration has now filed a third motion, again seeking to dismiss Calderon's suit for failure to exhaust her administrative remedies. This time, the agency gets it right. The Court will, accordingly, grant the motion and will dismiss Calderon's complaint. The Court will do so, however, without prejudice and will permit Calderon either to file an amended complaint or a new action at the appropriate time.

### I. BACKGROUND

The Court recounted the background of this case in its recent memorandum opinion and order, *see* Dkt. 31, and will repeat that background only as relevant here. Calderon, who is

proceeding *pro se*, originally brought this action in D.C. Superior Court on February 2, 2017, alleging that the Social Security Administration should be compelled (1) to defer making monthly retirement benefit payments to her based on her own earnings and, instead, (2) to make payments based on her former spouse's earnings record. Dkt. 1-1. Although the basis for her claims is unclear, the Court must construe her complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). She alleges that she "requested a claim" for her former spouse's retirement benefits in 2016 but was told to "return next year" when she "became 62." Dkt. 1-1 at 4. When she returned to a Social Security office in January 2017, she was told to "come back in April." *Id.* Calderon alleges, however, that she then received confirmation for an appointment scheduled for February 1, 2017, which she attended. During that appointment, Calderon allegedly received conflicting accounts as to the amount and timing of her future benefits. *Id.* She took issue with a document the Social Security Administration presented to her summarizing her benefits, which she alleges was "for[g]ed" and "fictitious." *Id.* At the end of the appointment, Calderon told the Social Security Administration representative to "cancel [her] request" and that she would "see [them] in Court." *Id.* at 5. Calderon filed an action in the D.C. Superior Court the following day.

The Social Security Administration removed the case to this Court, Dkt. 1, and moved to dismiss for lack of subject matter jurisdiction, arguing that Calderon failed to exhaust her administrative remedies, Dkt. 12. The Court denied that motion without prejudice because the government failed to file any of the exhibits referenced in the motion and, as a result, Calderon did not have a meaningful opportunity to respond to the factual assertions contained in the government's brief. *See* Minute Order (Jan. 18, 2018).

The Social Security Administration then renewed its motion to dismiss, this time including the exhibits. Dkt. 22. But that motion also suffered from a fatal defect; it had "nothing to do with the claims that Calderon ha[d] brought." Dkt. 31 at 3. Although Calderon argues that the Social Security Administration should have delayed payment of her Social Security retirement benefits, and should have made retirement benefits to her based on her former husband's earnings report, the government's motion argued that Calderon had failed to exhaust administrative remedies relating to a claim that she filed in 2011 for supplemental security income ("SSI") on the basis of an alleged disability. *Id.* at 4. In other words, even though the complaint referred to "retirement payment[s]" and to her former spouse's "earnings," *see* Dkt. 1-1 at 1–8, the government incorrectly read it to challenge the Social Security Administration's denial of SSI benefits, Dkt. 31 at 4. The Court, accordingly, denied the government's motion to dismiss.

The Court then ordered the parties to file a joint status report setting forth their respective factual and legal positions and proposing a schedule for resolving the case in "an expeditious" manner, *id.* at 5, and further ordered that the parties appear for a status conference to discuss further proceedings. In its status report and during the status conference, the Social Security Administration informed the Court of its intention to file yet another motion to dismiss for lack of subject matter jurisdiction, this time arguing that Calderon had not exhausted the administrative process for her retirement benefits claim. The Social Security Administration filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on September 20, 2018.[1] Dkt. 36. That motion is now before the Court.

---

[1] The government's motion also requested that, if the Court were to deny its motion to dismiss, it order that Calderon provide a more definite statement pursuant to Federal Rules of Civil Procedure 8 and 12(e). Dkt. 31 at 6 n.3.

## II. ANALYSIS

Before turning to the merits of the pending motion, it is necessary to clarify a procedural limitation on the relief that the Social Security Administration may seek at this stage of the proceeding. Under the Federal Rules, "a party that makes a motion under [Rule 12] must not make another motion [to dismiss] raising a defense or objection that was available to the party but omitted from its earlier motion," Fed. R. Civ. P. 12(g)(2), except to the extent such a motion challenges the court's subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1384 & 1393 (3d ed. 2018) (noting that "[a]ny defense that is available at the time of the original motion, but not included, may not be the basis of a second pre-answer motion," but that "a question of subject matter jurisdiction may be presented by any interested party at any time throughout the course of the lawsuit" by any means); *see also* Fed. R. Civ. P. 12(h)(2) (preserving a defendant's right to raise certain other defenses in the defendant's answer, a motion for judgment on the pleadings, or at trial, but not in a successive motion to dismiss). Because this is the Social Security Administration's third motion to dismiss, the Court may entertain the motion only to the extent it challenges the Court's subject matter jurisdiction. And, because administrative exhaustion requirements are at times jurisdictional, *see, e.g.*, *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006), and at other times non-jurisdictional, *see, e.g.*, *Doak v. Johnson*, 798 F.3d 1096, 1103–04 (D.C. Cir. 2015), the Court must start by considering the nature of the defense at issue here.

The Social Security Act provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C.

§ 405(g) (hereinafter "§ 405(g)"). Another provision of the Act, moreover, makes clear that § 405(g) constitutes the exclusive grant of jurisdiction for courts to review "findings of fact or [a] decision of the Commissioner of Social Security." 42 U.S.C. § 405(h) ("No findings of fact or decision of the Commission . . . shall be reviewed by any person, tribunal, or governmental agency except as herein provided" and "[n]o action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under" Title II of the Social Security Act). *See also Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018). Although the statute leaves little doubt that Calderon's sole recourse lies in an action brought pursuant to § 405(g), the question whether the statutory exhaustion requirement is jurisdictional has generated substantial litigation. *See Shands Jacksonville Med. Ctr. v. Azar*, No. cv 14-263, 2018 WL 6831167, at *14 (D.D.C. Dec. 28, 2018).

According to the Social Security Administration, exhaustion under 42 U.S.C. § 405(g) "is a 'statutorily specified jurisdictional prerequisite,'" Dkt. 36 at 5 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)), which Calderon had failed to satisfy. Relying on the plain language of the statute, the government argues that § 405(g) "'clearly limits judicial review to a particular type of agency action'"—namely, a "final decision" at the end of the Social Security Commission's "four-step administrative review process." *Id.* (quoting *Califano v. Sanders*, 430 U.S. 99, 108 (1977)). The government is correct that, "[o]n its face[,] § 405(g) thus bars judicial review of any denial of a claim of [Title II] benefits until after a 'final decision' by the Secretary after a 'hearing.'" *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976). But, as the Supreme Court held in *Mathews v. Eldridge*, 424 U.S. at 328, the "final decision" requirement "consists of two elements, only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by

5

the Secretary in a particular case." "The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary" because, "[a]bsent such a claim there can be no 'decision' of any type." *Id.* In contrast, "[t]he waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted." *Id.*

Exactly what the *Mathews* Court meant by this has generated disagreement over the past forty years. Shortly after the *Mathews* decision, for example, the Supreme Court stressed that *Mathews* involved a constitutional challenge, and the Court thus read the decision as an application of the "principle that when constitutional questions are in issue, the availability of judicial review is presumed, and" a statutory scheme should not be construed to foreclose review "unless Congress's intent to do so is manifested by 'clear and convincing' evidence." *Califano v. Sanders*, 430 U.S. at 109 (quoting *Salfi*, 422 U.S. at 762). Later, over the dissent of three Justices, a majority of the Supreme Court read *Mathews* to stand more broadly for the proposition that "§ 405(g) consists of a nonwaivable" presentment requirement "and a waivable requirement that the" claimant fully pursue "the administrative remedies prescribed by the Secretary." *Heckler v. Ringer*, 466 U.S. 602, 617 (1984); *but see id.* at 639 n.27 (Stevens, J., dissenting in part and concurring in the judgment in part) ("the language in [*Mathews*] on which the majority relies . . . is most sensibly read" to mean that "the usual (but not necessarily only) means for obtaining a 'decision from the Secretary' is the filing of an application for benefits"). The Court read *Mathews* to the same effect more recently in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 15 (2000).

The meaning of "presentment" has also generated some uncertainty. Harking back to the original explanation in *Mathews* that "presentment" is required because, "[a]bsent a claim there can be no 'decision' of any type," *Mathews v. Eldridge,* 424 U.S. at 328, the D.C. Circuit

6

explained in *National Kidney Patients Association v. Sullivan* that the "presentment" requirement arises from "§ 405(g)'s requirement of 'some decision by the Secretary,'" even if that decision is not the final word in the administrative process. 958 F.2d 1127, 1131 (D.C. Cir. 1992) (quoting *Mathews v. Eldridge*, 424 U.S. at 328). As the D.C. Circuit noted, the *Mathews* Court "found presentment . . . , for example, on the basis of the claimants' having presented their claims to the local Social Security office and on appeal to the regional office." *Id.* Other decisions, however, do not—at least explicitly—limit the "presentment" requirement to circumstances in which there has been "some decision by the Secretary." *See*, *e.g.*, *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993); *Cost v. Soc. Sec. Admin.*, 770 F. Supp. 2d 45, 48–49 (D.D.C. 2011), *aff'd*, No. 11-5132, 2011 WL 6759544 (D.C. Cir. Dec. 2, 2011); *see also Belmonte v. Colvin*, No. 16-1077-APM, 2016 WL 6584476, at *1 (D.D.C. Nov. 7, 2016); *Suarez v. Colvin*, 140 F. Supp. 3d 94, 99 (D.D.C. 2015); *Nat'l Ass'n for Home Care & Hospice, Inc. v. Burwell*, 77 F. Supp. 3d 103, 109 (D.D.C. 2015); *Hall v. Sebelius*, 689 F. Supp. 2d 10, 22 (D.D.C. 2009); *Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008).

Fortunately, at least for now, the Court need not step into this thicket. Regardless of whether *Mathews* and its progeny read § 405(g) to impose a jurisdictional "presentment" or jurisdictional "presentment-plus-initial-decision" requirement, Calderon has failed to carry her burden of alleging facts or offering evidence sufficient to show that the Court has jurisdiction to consider her challenge. "The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). Calderon filed her complaint in the D.C. Superior Court on February 2, 2017, Dkt. 1-1, and the Social Security Administration removed the action to this Court on March 17, 2017, Dkt. 1. Yet, according to the undisputed evidence before the Court, Calderon did not file "an

7

application for Retirement Insurance Benefits" until May 24, 2017. Dkt. 36-1 at 2 (Sampson Decl. ¶ 3). To be sure, Calderon does allege that she visited the Social Security office in November 2016 and in January and February 2017. *See* Dkt. 1-1 at 4. She does not allege, however, that she ever filed a claim. An exhibit attached to her complaint, moreover, confirms that she was told to "to come back in April to June to set" an appointment "to file" a claim. *Id.* at 20. Those same notes also indicate that she should bring her marriage certificate, identification, and account information with her at that time. *Id.* Exhibits attached to the government's motion, similarly, reflect that Calderon returned to the Social Security office on May 24, 2017 and, at that time, "completed [her] application for Social Security Benefits." Dkt. 36-1 at 4. But, before May 24, 2017, Calderon had not satisfied the "presentment" requirement under any plausible reading of the case law, and thus this Court lacked jurisdiction to consider her case at the time when it was filed in the Superior Court (February 2, 2017) and when it was removed to this Court (March 17, 2017).

This leaves the question whether the Court should look past the flaws in Calderon's complaint and rely on facts occurring after she filed. In *Mathews v. Diaz*, 426 U.S. 67, 75 (1976), the Supreme Court did exactly that in a similar context. There, one of the plaintiffs in a Medicare Part B case had failed to comply with the presentment requirement of § 405(g) before she was joined in the action, but she "satisfied this condition while the case was pending in the District Court." *Id.* The plaintiff's failure to satisfy the presentment requirement before joining the suit was not fatal, according to the Supreme Court, because "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue," and, even after the case had reached the Supreme Court, it was "not too late . . . to supplement the complaint to allege" the new, jurisdictional facts. *Id.* As a result, the Court treated "the pleadings as properly

8

supplemented by the Secretary's stipulation that" the plaintiff "had filed an application" as required by § 405(g). *Id.*

In light of the *Diaz* decision, precedent from other circuits, and the language of Federal Rule of Civil Procedure 15(b)—which permits a court, on motion, to allow a party to serve a supplemental complaint "setting out any transaction, occurrence, or event that happened after the date of the" original complaint—the D.C. Circuit recently held that "a plaintiff may cure" a jurisdictional "defect" by filing "an amended pleading alleging facts that arose after filing the original complaint." *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018). Because this Court lacked jurisdiction under § 405(g) at the time Calderon brought suit, and because the complaint, as currently pled, does not satisfy the presentment requirement, the Court will dismiss the complaint. But, in light of the *Diaz* and *Scahill* decisions, the Court will provide Calderon with two options: she may either file an amended complaint addressing the existing jurisdictional defects within 30 days; or she may first exhaust her administrative remedies and file a new action consistent with the relevant statute and regulations.

The Court notes that in *Diaz* the Plaintiff did not actually file an amended complaint. There, the Supreme Court found that "the record disclose[d] . . . that the jurisdictional condition was satisfied" by the time of the initial appeal, and the Supreme Court, accordingly, simply "treat[ed] the pleadings as properly supplemented." 426 U.S. at 75. According to the Social Security Administration's declaration, moreover, there is some indication that Calderon has, in fact, received an initial decision since this lawsuit commenced. *See* Dkt. 36-1 at 2–3 (Sampson Decl. ¶ 3) ("The plaintiff was awarded retirement benefits on her own record on May 29, 2017. The plaintiff was awarded retirement benefits on her spouse's record on July 10, 2017. . . The

9

plaintiff filed for reconsideration on June 6, 2017. The claimant's request for reconsideration is pending.").

The Court, however, declines to treat Calderon's complaint as constructively amended for three reasons. First, any case management concerns that may have applied in the Supreme Court are absent here. Although requiring that the plaintiff file a supplemental pleading would have disrupted the Supreme Court proceedings, no similar concern applies at this stage of the litigation. Second, *Scahill* makes clear that the proper course for remedying a jurisdictional defect is to have the plaintiff file "an amended pleading"; the D.C. Circuit did not authorize lower courts to treat complaints as constructively amended *sua sponte*. 909 F.3d at 1184. Third, granting leave to amend the complaint allows Plaintiff to make a strategic choice about how to proceed with this litigation. So far, the Court has addressed only the jurisdictional presentment requirement of § 405(g). The Court leaves for another day the question whether Calderon has failed to exhaust her administrative remedies as required by § 405(g) and, if so, whether that failure would give rise to a non-jurisdictional defense. For present purposes, the Court merely notes that, if Calderon amends her complaint to allege that she presented a claim to the Social Security Administration and received an initial decision,[2] and if the government raises an exhaustion defense, the Court will still need to decide whether Calderon has complied with the non-jurisdictional element of § 405(g). The Plaintiff is entitled to make the strategic decision whether to amend and face this possibility or, instead, to wait for a final administrative decision from the Social Security Administration and reinitiate her lawsuit at a later date.

---

[2] As discussed above, the Court does not express a view as to whether § 405(g) imposes a jurisdictional "presentment" or a jurisdictional "presentment-plus-initial-decision" requirement.

## CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's motion to dismiss, Dkt. 36, and will **DISMISS** the complaint with leave to amend within 30 days. If Calderon does not file an amended complaint within the 30 days, the Court will dismiss the action without prejudice.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 3, 2019