# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NIDIA CALDERON, *Plaintiff*, v. NANCY A. BERRYHILL, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, *Defendant*. | Civil Action No. 17-494 (RDM) |

## MEMORANDUM OPINION

Nidia Calderon, proceeding *pro se*, filed this action against the Social Security Administration ("SSA"), seeking the payment of certain retirement benefits. The SSA has moved to dismiss for lack of subject-matter jurisdiction on the grounds that Calderon failed to exhaust her administrative remedies, or in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted. Dkt. 42 at 2. For the reasons set forth below, the Court will grant the SSA's motion.

## I. BACKGROUND

The Court has twice described the factual and procedural history of this case, *see Calderon v. Berryhill*, 322 F. Supp. 3d 137 (D.D.C. 2018) ("*Calderon I*") and *Calderon v. Berryhill*, No. 17-494, 2019 WL 95565 (D.D.C. Jan. 3, 2019) ("*Calderon II*"), and, accordingly, will repeat that background only as relevant here.

Calderon originally brought this action in D.C. Superior Court in February 2017, alleging that the SSA should be compelled (1) to defer making monthly payments to her based on her

own earnings and, instead, (2) to make payments based on her former spouse's earnings record. Dkt. 1-1. The SSA removed that action to this Court and moved to dismiss for lack of subject-matter jurisdiction, arguing that Calderon failed to exhaust her administrative remedies. Dkt. 12. The Court denied that motion without prejudice because the SSA had failed to file the exhibits that it relied upon in its motion. Minute Order (Jan. 18, 2018).

On May 24, 2017, about four months after the first dismissal, Calderon filed an application for retirement insurance benefits with the SSA. Dkt. 42-1 at 2 (Sampson Decl. ¶ 3(a)). Five days later, the SSA awarded Calderon monthly retirement benefits based on her own employment record, and two weeks later the agency awarded her benefits based on her former spouse's employment record. *Id.* (Sampson Decl. ¶ 3(b)); *id.* at 11–16 (Def. Exs. 2 & 3). Shortly thereafter, Calderon sought administrative reconsideration of the SSA's action, explaining that she was seeking to delay benefits based on her own earnings and, instead, merely sought to receive benefits based on her former spouse's employment record. *Id*. at 3 (Sampson Decl. ¶ 3(c)); *id.* at 18 (Def. Ex. 4). In response, the SSA concluded that its original decision was correct and, accordingly, denied reconsideration. *Id.* at 3 (Sampson Decl. ¶ 3(e)); *id*. at 28–36 (Def. Ex. 5). Among other things, the SSA explained that, because Calderon applied for benefits based on her former spouse's employment record, she was "also deemed to have applied for retirement benefits." *Id*. at 32. The SSA's letter denying Calderon's request for reconsideration advised her that she had "60 days to ask for a hearing" before an Administrative Law Judge ("ALJ"); offered her assistance in completing the paperwork required to request a hearing; and explained that the 60-day period to seek a hearing could be extended only for "good reason." *Id*. at 28–29.

While the administrative process was ongoing, the SSA sought to dismiss Calderon's civil action on the ground that she had failed to exhaust her administrative remedies. On January 23, 2018, the SSA renewed its original motion to dismiss, again urging the Court to dismiss Calderon's suit for lack of subject-matter jurisdiction. Dkt. 22. Upon reviewing the SSA's second motion, the Court concluded that the agency addressed a different claim than the one Calderon asserted in her complaint; rather than addressing her retirement benefits claim, the SSA's motion addressed Calderon's 2011 Supplemental Security Income ("SSI") claim. Because that claim had nothing to do with this case, the Court again denied the SSA's motion to dismiss. *Calderon I*, 322 F. Supp. 3d at 138.

On January 3, 2019, the SSA filed a third motion, again seeking to dismiss Calderon's suit for failure to exhaust. *Calderon II*, 2019 WL 95565, at *1. In addressing that motion, the Court held that, because it was SSA's third motion to dismiss, the Court would "entertain the motion only to the extent it challenge[d] the Court's subject-matter jurisdiction." *Id.* at *2 (citing Fed. R. Civ. P. 12(g)(2)). Non-jurisdictional defenses were not considered because, as the Court explained, "'a party that makes a motion under [Rule 12] must not make another motion [to dismiss] raising a defense or objection that was available to the party but omitted from its earlier motion,' Fed. R. Civ. P. 12(g)(2), except to the extent such a motion challenges the court's subject-matter jurisdiction." *Id.* (citing Fed. R. Civ. P. 12(h)(3); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §§ 1384 & 1393 (3d ed. 2018)).

After considering the parties' submissions, the Court concluded that Calderon had not alleged facts or offered evidence sufficient to show that the Court had jurisdiction to consider her suit. *Id.* at *4. Calderon filed the action on February 2, 2017, three months before filing—*i.e.*, "presenting"—her claim to the SSA on May 24, 2017. *Id.* Because jurisdiction is determined at

3

the date the complaint is filed, § 405(g)'s jurisdictional "presentment" requirement was not satisfied when Calderon filed her complaint, and, therefore, the Court lacked jurisdiction. *Id.* In granting the motion to dismiss, the Court left for Calderon the decision whether to amend her complaint to allege that she satisfied § 405(g)'s presentment requirement (as needed for this Court to exercise jurisdiction) or to "wait for a final administrative decision from the Social Security Administration and reinstate her lawsuit at a later date." *Calderon II*, 2019 WL 95565, at *5.

On January 30, 2019, Calderon filed a pleading, Dkt. 41, which the Court deemed an amended complaint. Minute Order (Jan. 30, 2019). The SSA has now filed its fourth motion to dismiss. Dkt. 42. As with its prior motions, SSA seeks dismissal on the ground that the Court lacks subject-matter jurisdiction because Calderon has not exhausted her administrative remedies. *Id.* at 2. In the alternative, the SSA argues that Calderon has failed to state a claim upon which relief can be granted and moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), *id.*, or requests that the Court, if necessary, "convert [the SSA's motion] to a motion for summary judgment," *id.* at 5. The day after the SSA filed its motion, the Court entered an order noting that the SSA sought, in the alternative, to treat its motion as a motion for summary judgment and, accordingly, ordered that the SSA file a statement of material facts not in dispute and it also ordered that, in responding to the motion, Calderon file "a separate concise statement of genuine issues" that she contends are in dispute. Minute Order (Feb. 14, 2019). At the same time, the Court advised Calderon that the SSA had moved, in the alternative, for summary judgment and advised her of the requirements of Federal Rule of Civil Procedure 56. Dkt. 43 (*Fox*/*Neal* Order).

## II. ANALYSIS

Because SSA moves to dismiss on several grounds (most of which fail), the Court must "do some procedural untangling" to "reach [the] bottom line" in this case. *Osborn v. Visa Inc.*, 797 F.3d 1057, 1062 (D.C. Cir. 2015). As set out below, the Court holds that dismissal is not appropriate under Rule 12(b)(1) because Calderon has satisfied § 405(g)'s presentment requirement and thus, the Court has subject-matter jurisdiction. Second, the Court holds that dismissal is also improper under Rule 12(b)(6) because the SSA relies almost entirely on materials outside the pleadings. But, finally, the Court concludes that the SSA's motion should be converted to a motion for summary judgment, as the SSA requested, and that the SSA has carried its burden on summary judgment of demonstrating, based on the undisputed record, that Calderon failed to exhaust her administrative remedies and that her case falls into none of the recognized exceptions to the exhaustion requirement.

Accordingly, the Court will grant the SSA's motion for summary judgment.

### A. Rule 12(b)(1)

The SSA contends that the Court should dismiss Calderon's complaint for lack of subject-matter jurisdiction—even as amended—because she has failed to exhaust her administrative remedies. This contention, however, misapprehends the nature of the Social Security Act's exhaustion requirement and the Court's prior opinion. In *Calderon II*, the Court analyzed 42 U.S.C. § 405(g), which constitutes the exclusive grant of jurisdiction for courts to review SSA decisions, and found that § 405(g) limits judicial review to a "final decision." 2019 WL 95565, at *3. The Court also explained that the "final decision" requirement "'consists of two elements, only one of which is purely "jurisdictional" in the sense that it cannot be "waived" by the Secretary in a particular case.'" *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 328

(1976)). "'The nonwaivable element is the requirement that a claim for benefits shall have been *presented* to the Secretary;'" the "'waivable element is the requirement that the administrative remedies prescribed by the Secretary be *exhausted*.'" *Id.* (emphasis added). Simply put, before a district court has jurisdiction to review an SSA decision, § 405(g) requires that a claimant "present" her claim to the SSA, but the "presentment" requirement is not co-extensive with the exhaustion of administrative remedies.

After surveying the relevant case law, the Court also observed that there is a split among lower courts about the meaning of "presentment." *Id.* Some courts, for example, have required only that an SSA claimant file a claim, while others have required both a filing and an initial decision by the SSA. *See id.* (collecting cases). Under either approach, however, Calderon has satisfied § 405(g)'s presentment requirement. Indeed, the "SSA does not contest"—nor could it—that Calderon's "amended complaint meets [the] threshold [presentment] requirement," as she "has filed a retirement claim and SSA has issued an initial decision." Dkt. 42 at 4 (citing Dkt. 41 at 1). As a result, the Court has subject-matter jurisdiction over Calderon's challenge, and the SSA's motion to dismiss under Fed. R. Civ. P. 12(b)(1) must, accordingly, fail. *See Cost v. SSA*, 770 F. Supp. 2d 45, 49 (D.D.C. 2011) (citation omitted) ("A motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction is inappropriate where a defendant claims that a plaintiff failed to comply with only the non-jurisdictional exhaustion requirement."). Having resolved the jurisdictional issue presented, the Court now turns to the motion for dismissal for failure to state a claim.

**B.     Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a complaint that fails to "state a claim upon which relief can be granted" is subject to dismissal. The SSA argues that dismissal is

warranted here because Calderon has failed to exhaust her administrative remedies. That contention, however, again misunderstands the nature of the SSA exhaustion requirement. Because Calderon's amended complaint satisfies § 405(g)'s presentment requirement for the reasons noted above, the SSA's remaining exhaustion defense is an affirmative defense, not a jurisdictional defense. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court clarified that, when exhaustion is non-jurisdictional, plaintiffs "are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. Although *Jones* was decided in the context of a different statutory scheme, its logic applies here. Plaintiffs raising claims under § 405(g) need only plead and prove the jurisdictional "presentment" requirement. By contrast, the waivable exhaustion requirement is an affirmative defense that claimants are "free to omit . . . from their pleadings." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011); *see also Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (holding that "the defendant bears the burden of pleading and proving" exhaustion when it is an affirmative defense).

Of course, "even when failure to exhaust is treated as an affirmative defense, it may be invoked in a Rule 12(b)(6) motion if the complaint somehow reveals the exhaustion defense on its face." *Thompson v. DEA*, 492 F.3d 428, 438 (D.C. Cir. 2007). But that is not the case here. Rather, Calderon's complaint provides "scant information about [her] underlying claim," *Thibeaux v. SSA*, No. 12-01588, 2015 WL 12964650 at *5 (D.D.C. Oct. 20, 2015), *report and recommendation adopted*, 2016 WL 7839127 (D.D.C. Apr. 18, 2016), and fails to allege facts sufficient to resolve the SSA's failure-to-exhaust defense. The SSA's reliance on documents outside the pleadings confirm this conclusion. In support of its motion, the SSA offers the declaration of Michael Sampson, an employee of SSA's Office of Appellate Operations, and five exhibits, which together explain the agency's appellate procedure and provide the relevant SSA

documents for Calderon's case. *See* Dkt. 42-1. The SSA repeatedly cites the Sampson declaration and its exhibits in its motion, while—notably—failing to identify any allegations in Calderon's complaint relevant to the exhaustion issue. *See, e.g.*, Dkt. 42 at 3–4 (repeatedly citing to the Sampson declaration).

The Court, accordingly, cannot determine whether the SSA is entitled to prevail on its failure-to-exhaust defense, without "go[ing] beyond the face of the complaint and conduct[ing] further inquiry." *Kim*, 632 F.3d at 719. The Court cannot do so within the four corners of a motion to dismiss pursuant to Rule 12(b)(6). *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007) (internal citation and quotation omitted) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

### B. Rule 56

This does not end the inquiry, however, because the SSA requests that, if necessary, the Court "convert [its motion to dismiss] to a motion for summary judgment." Dkt. 42 at 5. Before doing so, the Court must assure itself that Calderon has received fair "notice and an opportunity to present evidence in support of [her] . . . position[,]" *Kim*, 632 F.3d at 719, and "that summary judgment treatment would be fair to both parties," *Tele–Commc'ns of Key W., Inc. v. United States*, 757 F.2d 1330, 1334 (D.C. Cir. 1985); *see also* Fed. R. Civ. P. 12(d) (requiring that "parties must be given a reasonable opportunity to present all the material that is pertinent to the motion" before a Rule 12(b)(6) motion may be treated as a motion for summary judgment).

Rule 12(d)'s requirements of notice and a reasonable opportunity to present controverting evidence and argument present no obstacle here. To start, the SSA's motion expressly requests that the Court, if necessary, treat the motion as a motion for summary judgment. Dkt. 42 at 5.

8

As a result, Calderon "had notice that [the SSA's] motion was, at least potentially, one for summary judgment." *Colbert v. Potter*, 471 F.3d 158, 168 (D.C. Cir. 2006). To be sure, that notice would have been clearer had the SSA moved, in the alternative, for summary judgment. *See id*. The SSA's request that the Court convert the motion to one for summary judgment was, however, with one exception, functionally equivalent. That one exception—that the SSA did not file a statement of materials facts not in dispute—moreover, was cured by the Court's Minute Order, filed the day after the SSA filed its motion, requiring the SSA to file a "statement of material facts as to which the moving party contends there is no genuine issue," and requiring Plaintiff to file, along with her opposition, "a separate concise statement of genuine issues" responding to the SSA's statement. Minute Order (Feb. 2, 2019). Finally, any doubt about Calderon's notice and opportunity to present responsive evidence and argument is put to rest by the Court's further order, issued that same day, advising Calderon that the SSA had moved, "in the alternative, for Summary Judgment," and advising her of the relevant requirements that Rule 56 imposes on a party opposing summary judgment. Dkt. 43 (*Fox*/*Neal* Order). The Court will, therefore, convert the SSA's motion into a motion for summary judgment.

A motion for summary judgment requires the movant to show "that there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Liberty Lobby*, 477 U.S.

9

at 255. In the instant motion, the SSA argues that there is no genuine dispute that Calderon has failed to exhaust her administrative remedies and that, as a result, the agency is entitled to judgment as a matter of law. *See* Dkt. 42 at 7.

Under the Social Security Act, judicial review is available only after a "final decision of the Commissioner of Social Security made after a hearing to which [the litigant] was a party." 42 U.S.C. § 405(g). "[T]he term 'final decision' is not only left undefined by the Act, but its meaning is left to the Secretary to flesh out by regulation." *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Consistent with this framework, the Secretary has promulgated regulations establishing a four-step administrative review process, that an aggrieved party must complete to exhaust her administrative remedies: (1) the aggrieved party must obtain an initial determination; (2) if that determination is adverse, she must seek reconsideration of that determination; (3) if she is "dissatisfied with the reconsideration determination," she must request a hearing before an ALJ; and (4) if she is "dissatisfied with the decision of the" ALJ, she must seek review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)-(4); *see also id.* § 416.1400(a)(1)–(4). Only after "complet[ing] the[se] steps" may an aggrieved party "request judicial review by filing an action in a Federal district court." 20 C.F.R. § 404.900(a)(5). Although the regulations also establish a process for obtaining expedited review in a federal district court—where, for example, the aggrieved party does not dispute the SSA's findings of fact or its application or interpretation of controlling law but believes that a part of the law is unconstitutional—Calderon does not invoke that provision and does not assert the type of challenge contemplated by the expedited review provision. *See id.* § 404.900(a)(6).

The undisputed facts show that Calderon has not completed the SSA's four-step review process. The Sampson declaration attests that Calderon has obtained an initial decision, Dkt. 42-

1 at 2 (Decl. ¶ 3(b)); has sought and been denied reconsideration, *id*. at 3 (Decl. ¶¶ 3(c), (e)); but has not "requested a hearing" before an ALJ or obtained a decision from an ALJ, *id.* (Decl. ¶ 3(f)); *see also id.* at 11 (Def. Ex. 2); *id.* at 17 (Def. Ex. 4); *id.* at 28 (Def. Ex. 5). Calderon does not dispute these facts. The evidence in the record also demonstrates that Calderon received notice that she had the right to request a hearing to contest the denial of her request for reconsideration. *See id.* at 3 (Def. Ex. 5). Despite this notice, she neither claims nor provides any evidence that she took any steps beyond seeking reconsideration. As a result, the uncontroverted record establishes that Calderon has failed to exhaust her remedies. This failure to exhaust is "fatal to [Calderon's] claims unless the Court determines the exhaustion requirement should be excused." *Hall v. Sebelius*, 689 F. Supp. 2d 10, 23 (D.D.C. 2009).

As the Court has previously explained, § 405(g) includes both a jurisdictional "presentment" requirement and a non-jurisdictional "exhaustion" requirement. *Calderon II*, 2019 WL 95565, at *3 (citing *Mathews*, 424 U.S. at 328); *see also Triad at Jeffersonville I, LLC v. Leavitt*, 563 F. Supp. 2d 1, 16 (D.D.C. 2008). Although the non-jurisdictional exhaustion requirement is not absolute, waiver is available only in "exceptional circumstances." *UDC Chair Chapter, Am. Ass'n of Univ. Professors v. Bd. of Trs. of UDC*, 56 F.3d 1469, 1475 (D.C. Cir. 1995) (internal quotation and citation omitted)). "A court may waive the exhaustion requirements of § 405(g) when (1) the issue raised is entirely collateral to a claim for payment; (2) plaintiffs show they would be irreparably injured were the exhaustion requirement enforced against them;" or where "(3) exhaustion would be futile." *Triad at Jeffersonville I, LLC*, 563 F. Supp. 2d at 16 (citing *Bowen v. City of New York*, 476 U.S. 467, 483–85 (1986)). Under those circumstances, a court may waive the requirement, but only if the "'litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or

administrative autonomy that the exhaustion doctrine is designed to further.'" *Am. Hosp. Ass'n v. Azar*, 348 F. Supp. 3d 62, 75 (D.D.C. 2018) (quoting *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004)).

Calderon fails to offer *any* basis to conclude that her failure to exhaust should be excused on the present record. Her claim is not collateral to a claim for payment; rather, she seeks to adjust the payments that she is receiving—and will in the future receive—from the SSA. She has failed to offer any evidence or argument suggesting that time is of the essence and that, absent immediate judicial review, she will sustain an irreparable loss. Nor has she offered any basis to conclude that exhaustion would have been futile. Notably, "[t]he futility exception only applies where exhaustion would be 'clearly useless,' such as where the agency 'has indicated that it does not have jurisdiction over the dispute, or because it has evidenced a strong stand on the issue in question and an unwillingness to reconsider the issue.'" *Lazaridis v. SSA*, 856 F. Supp. 2d 93, 98 (D.D.C. 2012) (quoting *Randolph-Sheppard Vendors v. Weinberger*, 795 F.2d 90, 105–06 (D.C. Cir. 1986)). Here, however, nothing in the record suggests that exhaustion "would be futile because the Secretary's procedures are infirm, or because the Secretary has adopted a clandestine policy." *Abbey v. Sullivan*, 978 F.2d 37, 45 (2d Cir. 1992). And disregarding the exhaustion requirement merely because the agency decided on reconsideration that its initial determination was "correct and proper," Dkt. 42-1 at 36, Def. Ex. 5, would undermine the statutory and regulatory goal of ensuring that aggrieved parties obtain a considered and final determination from the SSA before filing suit.

Finally, the Court notes that the SSA's February 13, 2019 denial granted Calderon sixty days to request a hearing, subject to extension only upon a showing of good cause. *Id.* at 28 (Def. Ex. 5); *see also* 20 C.F.R. § 404.933(b)(1) (providing that a claimant has "60 days after the

date [she] receive[s] notice" to request a hearing). The notice also indicated that this 60-day deadline began to run five days after the date on the notice, meaning that Calderon had until April 19, 2019 to request a hearing. There is no evidence that she has done so, and, therefore, Calderon may be unable to obtain a hearing absent a showing of good cause. Although the Court recognizes that it might now be too late for Calderon to seek a hearing before an ALJ,[1] "one cannot avoid an exhaustion requirement merely by delaying beyond the time that an administrative proceeding must be brought," *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 968 (D.C. Cir. 1990). "Were the rule otherwise, an exhaustion requirement could be circumvented all too easily." *Id.*

## CONCLUSION

For the foregoing reasons, the Court will grant the SSA's motion for summary judgment, Dkt. 42.

A separate order will issue.

> /s/ Randolph D. Moss
> RANDOLPH D. MOSS
> United States District Judge

Date: September 20, 2019

---

[1] The Court notes that, under SSA regulations, good cause exists when "within 60 days of receiving the [reconsideration decision] . . . [the claimant] filed a civil suit." 20 C.F.R. § 404.911(b)(5). The Court expresses no view on whether that or any other basis might exist for extending the 60-day requirement in this case.

13